### The inhabitants of HALLOWELL *vs.* The inhabitants of SACO.

The domicil is not affected by the forming of an intention to remove, unless such intention is carried into effect.

In order to have received supplies as a pauper, constructively, so as to prevent the operation of *Stat.* 1821, *ch* 122, they must have been furnished to one under the care and protection of him whose settlement is in question, and for whose support he is by law responsible.

THE question in this case was upon the settlement of one *Clarissa Dearborn,* a pauper. She was the wife of *James Dearborn,* who once had his settlement in *Saco.* Prior to 1814, he had resided at

several places in *Gardiner, Pittston* and *Hallowell* ; and in that year he enlisted as a soldier. In the autumn of 1818 he came into the service of *John Goodwin,* in *Hallowell,* where he continued as a laborer, till the autumn of 1819, when he went into the State of *Georgia,* to cut timber. In *April* 1820, he returned to the service of *Goodwin,* for whom he worked six months at wages ; and in *November,* of that year, he engaged to work for him during the ensuing winter, or as long as the sledding season should last ; and under this contract he was at work for *Goodwin,* in *Hallowell,* on the 21st of *March* 1821, when the settlement-law was enacted. He kept his chest and clothes at *Goodwin's* house, having no other home. He had been separated from his wife for seven years. On the 20th of *March* 1821, she came to *Pittston,* and information of this fact was sent to her husband in the afternoon of the following day. He immediately informed *Goodwin* that he could not work for him any longer, but must go and provide for his wife ; and the next day being the 22d, he went to *Pittston,* to make arrangements for procuring her a place of abode. He then lived with her a few months in *Pittston,* and removed with her to *Hallowell,* in *September* 1821. He had been assessed and paid his taxes in the latter town in 1819, and the three succeeding years.

In 1814 the pauper, being in distress in *Hallowell,* was relieved by that town ; from which she was removed to *Saco,* by the overseers of the latter place, on notice regularly given to them ; and she was supported in *Saco,* as a pauper, from *October* 1820, to *March* 1, 1821. Her husband knew of her residence at *Saco* in 1820 ; and previous to *October* in that year he was informed that she was supported in the town of *Saco,* with which he expressed himself satisfied.

Upon this evidence *Weston J.* before whom the cause was tried, directed a verdict for the defendants ; and reserved the question of domicil for the consideration of the Court.

*Sprague,* for the plaintiffs, contended that the domicil depended on residence without an intention of removing. But here, the husband had formed and expressed such intention on the day of the

Hallowell *v.* Saco.

passage of the act. If on any part of that day he formed the intention to remove, his domicil was not then in *Hallowell. Kilham v. Ward* 2. *Mass.* 236. *Granby v. Amherst* 7. *Mass.* 1. *Abington v. Boston* 4. *Mass.* 312. *Parsonsfield v. Perkins* 2. *Greenl.* 411. *Knox v. Waldoborough* 3. *Greenl.* 457.

2. But if this view of the law is not sustained, yet the husband was not within the provisions of the statute, having received supplies as a pauper, within a year previous to its enactment. For the supplies furnished to the wife, were furnished with his knowledge and approbation, he being unable to support her ; and he thus became a party to the transaction.

*Allen,* for the defendants, being stopped by the court as to the first point, referred to the rule recognized in *Green v. Buckfield,* 3 *Greenl.* 136, and in *Dixmont v. Biddeford, ib.* 205, as decisive of the question of constructive supplies, against the plaintiffs, even if the husband had knowledge of the fact of their being furnished to the wife. But, in the case at bar, no such knowledge appears, the testimony to this point having relation to a period anterior to the relief afforded.

PREBLE J. in delivering the opinion of the Court, adverted to the facts shewing that the residence of the husband was in *Hallowell,* up to the time of the passage of the statute ; and observed that his domicil remained there, unless his conceiving an intention, on the evening previous, to leave that town and live with his wife, has changed it. But, he said, it was not sufficient merely to have formed such intention ; it must be executed, and carried into effect by an actual removal, before the domicil is changed. In the case at bar, though the husband had formed an intention to remove, he had not carried it into execution ; and his domicil therefore remained as before.

As to the second point, it has been decided that, notwithstanding the language of the statute, a man may receive supplies, so as to prevent its operation, which are not furnished personally to himself ; in other words, may receive them constructively. In all such cases, however, the supplies must have been furnished to some person un-

der the care and protection of him whose settlement is to be affected; and for whose support he is by law responsible. But in the present case, the pauper was not under the care and protection of the husband. They had been separated, and lived apart, several years. The supplies, therefore, furnished by *Saco*, within a year previous to the passage of the statute, were not supplies to the husband, so as to bar its effect in fixing his settlement in *Hallowell*.

*Judgment on the verdict.*